RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

2020 APR -6  P 3: 47

DEBRA P. HACKETT, CLK
U. DISTRICT COURT
MIDDLE DISTRICT ALA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
)
Plaintiff, )
)
v. )
)
ARMY SUSTAINMENT, LLC )
*f/k/a L-3 Army Sustainment, LLC* )
*f/k/a Army Fleet Support, LLC;* )
)
Defendant. )

CIVIL ACTION NO.   1:20-cv-00234

COMPLAINT
JURY TRIAL REQUESTED

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Parties Melvin Simmons and Paul Nolin, and a class of aggrieved individuals ("the class"), who were adversely affected by such practices.

As alleged with greater particularity in paragraphs twenty-four (24) through sixty-nine (69) below, Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") alleges that Defendant Army Sustainment, LLC, f/k/a L-3 Army Sustainment, LLC f/k/a Army Fleet Support, LLC discriminated against  Charging Parties Melvin Simmons ("Simmons") and Paul Nolin ("Nolin"), and a class of other qualified individuals with disabilities, by: 1) requiring them to discontinue taking  medications prescribed to them by their physicians for their disabilities in order to continue to work for the Defendant, 2) not allowing them to work when they refused to discontinue taking those medications, and 3) failing to accommodate their need to take those medications for their disability-related medical conditions. In addition, Defendant maintained a

drug policy that operated as an impermissible qualification standard that screened out individuals with disabilities in violation of the ADA.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Alabama.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1).

4.     At all relevant times, Army Sustainment, LLC, f/k/a L-3 Army Sustainment, LLC, f/k/a Army Fleet Support, LLC was doing business in the State of Alabama as a government contractor providing aviation maintenance support to the United States Army Aviation Center and the United States Air Force at Fort Rucker, Alabama.

5.     At all relevant times, Army Sustainment, LLC has had at least 15 employees.

6.     At all relevant times, Army Sustainment, LLC has been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§

12111(5), (7), which incorporates by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b)(g) and(h).

7.      At all relevant times, Army Sustainment, LLC has been a covered entity covered under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8.      More than thirty (30) days prior to the institution of this lawsuit, Simmons and Nolin filed charges of discrimination with the Commission alleging violations of the ADA by Defendant.

9.      On March 14, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated with respect to Charging Party Simmons as well as a class of employees, and invited Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.     On March 25, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated with respect to Charging Party Nolin and invited Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11.     In its efforts to conciliate, the Commission engaged in communications with Defendant to provide Defendant with the opportunity to remedy the discriminatory practices described in the Letters of Determination. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.     On July 17, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission with respect to the charge filed by Simmons.

13.    On August 29, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission with respect to the charge filed by Nolin.

14.    All conditions precedent to the institution of this lawsuit has been fulfilled.

## STATEMENT OF FACTS

15.    At all relevant times, Defendant provided aviation maintenance support to the United States Army Aviation Center and the United States Air Force at Fort Rucker, Alabama. Defendant offered inspection and aviation intermediate maintenance repair, depot repair and approval, modification of aircraft parts and components, national maintenance program workload and local manufacture of parts and equipment, as well as on-site support of aircraft maintenance operations to satellite units. Defendant also provided maintenance on assigned buildings and training helicopters.

16.    From at least June 2016 until April 2018, Defendant maintained an Alcohol and Drug policy which prohibited the use (both during work and non-work hours) of certain prescription medications by employees in certain "safety-sensitive" positions.

17.    Among the proscribed medications were Amphetamines, Opiates, Barbiturates, Benzodiazepines, Propoxyphene, and Methadone.

18.    Employees who worked in a position with a "safety-sensitive" classification were required to report any prescribed medication that may affect their ability to safely perform their job duties to the Office of Occupational Health.  Employees were also subject to random drug testing.

19.    Under the policy, an employee who self-reported a prescribed medication or tested positive for a prescription medication listed in Defendant's Alcohol and Drug policy was referred to a company-authorized Occupational Medical Provider ("OMP") for a medical examination.

20.    At all times relevant to this action, Defendant's company-authorized OPM acted as agents of Defendant in the conduct of the medical examination.

21.   At the conclusion of the medical examination, OMP issued patient instructions to the employee regarding the use or non-use of the prescribed medication.

22.   For any prescribed medication not allowed under Defendant's Alcohol and Drug policy, employees were required to sign a written statement agreeing to discontinue use of the prohibited prescription.

23.   Defendant did not allow employees to return to work unless they executed an agreement that they would cease all use of the prescription medication prohibited under its Drug and Alcohol policy.

## STATEMENT OF CLAIMS

### COUNT 1
### (Discrimination on the Basis of Disability)

24.   Plaintiff realleges and incorporates by reference paragraphs one (1) through twenty-three (23) herein.

25.   Since at least May 28, 2016, Defendant has engaged in unlawful employment practices at its Fort Rucker, AL facilities and elsewhere in violation of Title I of the ADA, 42 U.S.C. § 12112(a). These unlawful employment practices include discriminating against Charging Party Melvin Simmons, Charging Party Paul Nolin, and a class of employees on the basis of their disabilities.

26.   Melvin Simmons is a qualified individual with a disability, or perceived disability, under the ADA, 42 U.S.C. §§ 12102 and 12111(8). Simmons has torn rotator cuffs that affect his musculoskeletal functions by substantially limiting major life activities, including but not limited to lifting, walking, bending, sleeping and sitting as compared to the general population.

27.   On or about August 1, 2016, Simmons returned from a four-month medical leave of absence after surgery for torn rotator cuffs in both shoulders. When Simmons reported to work,

Defendant's Representative for the Office of Occupational Health, Lauren Swain ("Swain"), asked if he was taking any medications.

28.     Simmons responded that he had been prescribed Lortab but it would not interfere with his work performance because he had taken it previously in accordance with the company's then-existing drug policy, which prohibited the use of certain medications within eight hours of reporting to work.

29.     Swain informed Simmons that Respondent's new policy provides that taking any opiate during both work and non-work hours is prohibited. Swain advised that because Lortab is prohibited under Defendant' policy, Simmons would not be allowed to return to work if he continued to take that medication.

30.     Swain then required Simmons to sign a "Drug and Alcohol-Free Workplace Program Results of RX Medication review letter," which stated that Simmons was taking an inappropriate medication and would be subject to termination if he continued to take the medication.

31.     Simmons signed the letter agreeing to discontinue all use of Lortab because he did not want to be terminated and lose his job.

32.     Simmons discontinued his use of Lortab and was treated by his physician with alternative pain medications. These alternative medications were not as effective at managing his pain. As a result, Simmons has taken intermittent FMLA leave when he has a pain flare up.

33.     Simmons performed his job safely while using his prescribed medication and did not pose a threat to the safety of himself or others.

34.     Defendant's refusal to allow Simmons to return to work and the threat of termination if he continued to use his disability-related prescription medication constituted discrimination on the basis of disability.

35.     Paul Nolin is a qualified individual with a disability, or perceived disability,  under the

ADA, 42 U.S.C. §§ 12102 and 12111(8). Nolin has end-stage osteoarthritis in the majority of his

body. His osteoarthritis affects his musculoskeletal functions and substantially limits his major life

activities, including but not limited to his ability to walk, run, sit, bend, lift and sleep as compared

to the general population.

36.     In July 2016, Nolin was referred to Defendant's OMP, Dr. Williams, after random drug

testing revealed his use of Adderall. During a consultation with Dr. Williams, Nolin revealed that

he was also using Oxycodone during non-work hours, as prescribed by his physician, for

management of chronic pain from osteoarthritis. Dr. Williams informed Nolin that he could no

longer take the pain medication because it was prohibited under Defendant' new drug policy.

Under the prior drug policy, Nolin had been permitted to take his pain medication during non-

work hours without incident. Nolin was informed that he would be terminated if he did not agree

to discontinue use of his pain medication.

37.     As a condition of continued employment, Nolin was required to sign paperwork that

affirmed he would be subject to discipline up to and including termination is random drug testing

revealed he was taking his pain medication in non-work hours and was also required to provide a

letter from his treating physician stating he would not prescribe Oxycodone to Nolin going

forward.

38.     After ceasing use of Oxycodone, Nolin tried other anti-inflammatories to relieve pain but

to little effect.

39.     Nolin performed his job safely while using his prescribed medication and did not pose a

threat to the safety of himself or others.

40.    Defendant's refusal to allow Nolin to return to work and the threat of termination if he continued to us his disability-related prescription medication constituted discrimination on the basis of disability.

41.    Defendant subjected other employees, who were qualified individuals with disabilities, to its drug policy. As a result of the application of Defendant's drug policy, qualified individuals with disabilities were terminated from employment, required to take leave to treat their conditions, required to take less effective medication to treat their disabilities, subjected to difficulty in pain management, and/or experienced emotional distress.

42.    Each individual for whom the EEOC seeks relief is a qualified individual with a disability, or perceived disability, who could perform the essential functions of his or her job with or without a reasonable accommodation.

43.    Each individual for whom the EEOC seeks relief was required by Defendant to discontinue taking medications prescribed to them by their physicians for their disabilities in order to continue to work for Defendant or was not allowed to work when they refused to discontinue taking those medications.

44.    Each individual for whom EEOC seeks relief was qualified to perform their job safely and without posing a threat to the safety of themselves or others.

45.    The effect of the practices complained of in paragraphs twenty-four (24) through thirty-six (36) above has been to deprive Charging Party Simmons, Charging Party Nolin, and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

### COUNT 2
### (Failure to Accommodate)

46.     Plaintiff realleges and incorporates by reference paragraphs one (1) through thirty-seven (37) herein.

47.     Since at least May 2016, Defendant has maintained an Alcohol and Drug Policy that does not provide for reasonable accommodation of qualified individuals with disabilities and which instead prevents their return to work while using certain medications, in violation of Section 102(b)(5)(A), 42 U.S.C. §§ 12112(b)(5)(A).

48.     Defendant's Alcohol and Drug policy prohibits an employee in a safety-sensitive position from all use of certain prescription medications.

49.     An employee who does not cease use of a medication under Defendant's Alcohol and Drug policy is prohibited from returning to work while taking the prescription or is subject to termination.

50.     Defendant discriminated against Simmons, Nolin, and the class when it applied Defendant's Alcohol and Drug policy to them and failed to make reasonable accommodations for their disabilities.

51.     Defendant failed to engage Simmons, Nolin and the class in an interactive process to determine whether they could safely perform their jobs while taking their prescribed medications.

52.     Instead, Defendant enforced against them a blanket policy prohibiting all use of certain medications.

53.     The effect of the practices complained of in paragraphs thirty-eight (38) through forty-four (44) above has been to deprive Charging Party Simmons, Charging Party Nolin, and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affected their status as employees because of their disabilities.

**COUNT 3**
**(Impermissible Qualification Standard)**

54.    Plaintiff realleges and incorporates by reference paragraphs one (1) through forty-five (45) herein.

55.    From at least May 28, 2016 to the present, Defendant has engaged in unlawful employment practices at its Fort Rucker, Alabama facility and elsewhere in violation of Title I of the ADA, 42 U.S.C. §§ 12112(b)(3) and 12112(b)(6). These unlawful employment practices include discriminating against Charging Parties Melvin Simmons and Paul Nolin, and a class of employees, on the basis of disability.

56.    Defendant's Drug and Alcohol Policy is qualification standard that screens out or tends to screen out qualified individuals with disabilities.

57.    Defendant, in the administration of its Drug and Alcohol Policy, used criteria that have the effect of discrimination on the basis of disability.

58.    Because Defendant did not allow any employee to return to a safety-sensitive position while taking a prohibited medication, qualified individuals with disabilities who took certain prescribed medications were prevented from returning to the workplace.

59.    Defendant, through the operation of these qualification standards and/or criteria discriminated against Simmons, Nolin, and a class of qualified individuals with disabilities by screening them out on the basis of disability and preventing them from working if they continued use of their prescription medicine.

60.    The effect of the practices detailed in paragraphs twenty-four (24) through fifty-three (53) above has been to deprive Charging Party Simmons, Charging Party Nolin, and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

## COUNT 4
### (Interference)

61.     Plaintiff realleges and incorporates by reference paragraphs one (1) through sixty (60) herein.

62.     Since at least May 28, 2016, Defendant has engaged in unlawful employment practices at its Fort Rucker, Alabama facility and elsewhere in violation of Title I of the ADA, 42 U.S.C. § 12203(b). These unlawful employment practices include discriminating against a class of sub-contractor employees, on the basis of disability.

63.     Defendant applied its Drug and Alcohol Policy to employees of sub-contractors who worked at its Fort Rucker, Alabama facilities.

64.     As a result of the application of Defendant's drug policy to sub-contractor employees, qualified individuals with disabilities were terminated from employment, required to take leave to treat their conditions, required to take less effective medication to treat their disabilities, subjected to difficulty in pain management, and/or experienced emotional distress, as described more fully in paragraphs twenty-four (24) through sixty (60) above.

65.     Defendant interfered with such employees' exercise and enjoyment of rights guaranteed and protected by the ADA, including but not limited to, the right to work free from disability discrimination, the right to reasonable accommodation, and the right not to be screened out by an unlawful qualification standard.

66.     Each individual employed by a sub-contractor for whom the EEOC seeks relief is a qualified individual with a disability, or perceived disability, who could perform the essential functions of his or her job with or without a reasonable accommodation.

67.     Each individual employed by a sub-contractor for whom the EEOC seeks relief was required by Defendant to discontinue taking medications prescribed to them by their physicians for their disabilities in order to continue to work for Defendant or was not allowed to work when they refused to discontinue taking those medications.

68.     Each individual employed by a sub-contractor for whom EEOC seeks relief was qualified to perform their job safely and without posing a threat to the safety of themselves or others.

69.     The effect of the practices detailed in paragraphs sixty-one (61) through sixty-eight (68) above has been to deprive a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

## ADDITIONAL ALLEGATIONS

70.     The unlawful employment practices complained of in paragraphs twenty-four (24) through sixty-nine (69) above were and are intentional.

71.     The unlawful employment practices complained of in paragraphs twenty-four (24) through sixty-nine (69) above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party Simmons, Charging Party Nolin, and the class.

72.     The unlawful employment practices complained of in paragraphs twenty-four (24) through sixty-nine (69) above were and are intentional.

73.     The unlawful employment practices complained of in paragraphs twenty-four (24) through sixty-nine (69) above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party Simmons, Charging Party Nolin, and the class.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on disability, including the denial of reasonable accommodations to qualified individuals with disabilities.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices, including but not limited to requiring that Defendant (i) amend its Alcohol and Drug Policy to state that Defendant must make exceptions to the policy when required by the ADA as a reasonable accommodation for employees with disabilities; (ii) publicize that amendment to all present and future employees; (iii) adhere to the amendment; and (iv) notify all former employees discharged under the Alcohol and Drug policy before it was amended of this action, its disposition, and the amendment.

C.      Order Defendant to make whole Charging Parties and a class of employees covered by the ADA by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, front pay and reinstatement.

D.      Order Defendant to make whole Charging Parties and a class of employees covered by the ADA by providing appropriate compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs twenty-four (24) through fifty-three (53) above, including, but not limited to, relocation expenses, job search expenses, and medical expenses, and other pecuniary losses, in amounts to be determined at trial.

E.      Order Defendant to make whole Charging Party and a class of employees covered by the ADA by providing appropriate compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs twenty-four (24) through sixty-seven (67) above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and other non-pecuniary losses in amounts to be determined at trial.

F.      Order Defendant to pay Charging Party and a class of employees and former employees covered by the ADA punitive damages for its malicious and reckless conduct described in paragraphs twenty-four (24) through sixty-seven (67) above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.


RESPECTFULLY SUBMITTED,

**SHARON FAST GUSTAFSON**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel


**MARSHA RUCKER**
Birmingham District Regional Attorney
PA Bar No. 90041

Equal Employment Opportunity
Commission
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL 35205
Tel. (205) 212-2045
Fax. (205) 212-2041