IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 1:20-CV-234-RAH-CWB |
| ARMY SUSTAINMENT, LLC, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

The Equal Employment Opportunity Commission, on behalf of a group of former employees of Army Sustainment, LLC—also referred to as Army Fleet Support, LLC (AFS)—claims that AFS violated the Americans with Disabilities Act when AFS prohibited employees who worked in safety-sensitive positions from continuing to use certain prescription medications. AFS has moved for summary judgment. (Doc. 153.) After considering the parties' arguments and evidentiary submissions, the Court concludes that AFS's summary judgment motion is due to be granted in part and denied in part.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331.   The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.   *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences from that evidence in favor of the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020).

# IV. BACKGROUND

## A. AFS's Alcohol and Drug Free Workplace Policy

AFS was the primary helicopter maintenance contractor at Fort Rucker (now known as Fort Novosel) from 2003 to 2018 and employed thousands of aircraft mechanics, technicians, and other aviation specialists at that location.

In 2012, AFS implemented an "Alcohol and Drug Free Workplace Procedural Guide 2501" that set forth policies and procedures related to employee drug use. Under this policy, AFS drug tested employees in safety-sensitive positions[1] for a variety of drugs,[2] including opioids, amphetamines, and benzodiazepines.[3]  (*See* Doc. 169-7 at 8, 12.)  Under the February 2016 version of the policy, with respect to prescription medications, employees were required to "report medications to the AFS Office of Occupational Health [OHD] when these prescriptions may affect their ability to safely perform their duties."  (Doc. 169-37 at 7.)  AFS's drug policy stated that "[c]ertain prescription medications may be unsafe for use during work hours but are acceptable for use during off duty hours while other prescription medications have been deemed inappropriate for use at all for employees in a safety sensitive

---

[1] According to AFS, the determination of which positions were classified as "safety-sensitive" was based on an "interactive process with the Government Flight Representative (GFR), who represented Army's interests regarding flight operations at Ft. Rucker."  (Doc. 153 at 19 (citing Doc. 153-56).)

[2] This is referred to as the "9-Panel."

[3] It is undisputed that these substances have both illegal and prescription applications.

environment" such as "pain killers with narcotics, anti-depressants, and prescription diet medications." (*Id.*)

In February 2016, AFS made two major changes to its drug policy that are the subject of the current dispute. First, prior to 2016, AFS employed a "6-to-8 Hour Rule" for employees in safety-sensitive positions who were *legally prescribed* 9-Panel medications. Under this rule, AFS's in-house OHD could independently clear an employee with a prescription 9-Panel medication to return to work so long as the employee agreed in writing that they would not take their medication within 6-to-8 hours before their shift. According to AFS, employees who submitted to this written agreement were rarely required to be cleared for work by outside medical professionals. In February 2016, AFS eliminated the 6-to-8-hour rule and instead required employees to undergo a medical evaluation with an outside Occupational Medical Provider (OMP) to determine whether an employee's prescription medication was appropriate for use during work hours. (*Id.*)

Second, as part of the medical evaluation process, employees prescribed medications "that may affect [their] ability to safely perform their job duties"— including 9-Panel medications—were sent to an OMP to discuss alternative medications "for any medication deemed to be a risk to the employee and/or the workplace." (*Id.* at 12.) As part of this prescription medication review process, AFS directed the OMPs to send a "Safety Sensitive Letter" to the employee's prescribing

doctor to confirm whether the employee was stable on their safety-sensitive medication or whether alternative medications were available that were as effective. If the prescribing doctor indicated that no alternative medications were available, the OMPs had to determine whether the employee could safely work while taking the medication in question. The policy additionally provided that "[e]mployees determined unable to work within the parameters of the Alcohol and Drug Free Workplace Policy will be deemed disabled and therefore eligible to apply for benefits IAW the short-term disability plan." (*Id.* at 10.)

## B. EEOC's Investigation

In November 2016, two AFS employees—Paul Nolin and Winston Mervin Simmons—filed charges of discrimination with the EEOC alleging that AFS's revised prescription drug policy discriminated against them because of their disabilities.

Simmons was employed by AFS as an aircraft mechanic, which was classified as a safety-sensitive position. Simmons suffered from osteoarthritis and several musculoskeletal injuries that required surgery. From 2000 to 2016, Simmons took Lortab intermittently to manage his chronic pain. Before 2016, AFS permitted Simmons to take Lortab the night before his shift pursuant to its "6-to-8 hour" rule. The record contains no evidence, nor is there any assertion by AFS, of any performance issues by Simmons as related to his use of Lortab.

Simmons took a medical leave of absence from March to August 2016 to undergo rotator cuff surgery. When Simmons returned, he met with OHD employee Laura Swaim and informed her that he took Lortab, as needed, for his back pain. Swaim informed Simmons that Lortab was prohibited under AFS's revised drug policy as it was considered an opiate and emphasized that AFS had a zero-tolerance policy. According to Simmons, to return to work, he was required to sign a "Drug and Alcohol-Free Workplace Program Results of Rx Mediation" review letter stating that he would not take Lortab and that he would be subject to disciplinary action, including termination, if he did. (Doc. 169-14 at 5.) Simmons was then cleared to work with no restrictions. On November 19, 2016, Simmons filed a Charge of Discrimination with the EEOC claiming that Swaim told him he was "not allowed to take [his] prescribed medication" and that he had been discriminated against because of his disability.

Nolin was also employed by AFS as an aircraft mechanic. Nolin was diagnosed with osteoarthritis and suffered from chronic pain, as well as ADHD. To treat these conditions, Nolin took Adderall and Percocet (containing Oxycodone). Before 2016, Nolin was allowed to take his pain medication 6 to 8 hours before his work shift began. The record contains no evidence, nor is there any assertion by AFS, of any performance issues by Nolin as related to his use of Adderall or Percocet.

On or about August 11, 2016, AFS required Nolin to undergo a medical review at PrimeCare with Dr. Yusef Williams.  After Nolin disclosed his prescription medications, Dr. Williams informed him that he could not take Percocet while working for AFS, per AFS's drug policy.  According to Nolin, after he complained, Dr. Williams told him that "there was nothing he could do because of what [AFS] says for him to do" and "suggested that [Nolin] drink beer instead."  (Doc. 169-11 at 4.)  According to Nolin, based on what Dr. Williams told him, he "could not return to work and faced having unpaid leave unless [he] agreed not to take Oxycodone" and that he understood that he would be fired if he continued to take his medication.  (Doc. 169-11 at 4.)

Dr. Williams sent Nolin's prescribing doctor, Dr. William Gammill, a medication change request form.  Dr. Gammill confirmed in the form that Nolin was "currently stable on Adderall" and that, as of August 11, 2016, he was no longer prescribing Percocet to Nolin.  (Doc. 155-9 at 11.)  That same day, Dr. Williams deemed Nolin fit for duty based on Nolin's agreement that he would stop taking Percocet, Dr. Gammill's confirmation that he would no longer prescribe Percocet, and because Nolin was stable on Adderall.  (Doc. 155-9 at 12, 15.)  On November 27, 2016, Nolin filed a Charge of Discrimination with the EEOC.

After receiving Simmons's and Nolin's charges of discrimination, the EEOC launched an investigation to determine whether AFS engaged in unlawful

discrimination in violation of the ADA.  As a result of its investigation, the EEOC found reasonable cause to conclude that AFS violated the ADA by not allowing the charging parties and a class of individuals "to continue to work or return to work while taking their disability-related medications" that were prohibited under AFS's alcohol and drug policy, and by failing to engage in the interactive process.  (Doc. 153-49 at 23.)  Furthermore, the EEOC determined that AFS's alcohol and drug policy constituted a blanket policy using impermissible qualification standards that "have the effect of discrimination on the basis of disability" in violation of the ADA. (*Id.*)  On April 6, 2020, the EEOC filed this action after conciliation efforts with AFS failed.

### C. The Individual Claimants

Due to the revised AFS policy, approximately 72 AFS employees underwent medical evaluations regarding their prescription medications.   Of those 72 employees, the EEOC brought this action on behalf of 17, including: Amber Ficquette Cottrell, Azeala Hutchinson, Heath McElveen, Marcus Rich, Mark Blinn, Matthew Black, Winston Mervin Simmons, Michael Sanders, Paul Nolin, Richard Johannes, Rick Skinner, Rickey Helmes, Rickey Sego, Sabra Distasio Kelley, Tammy Bright Hudson, Tammie Johannes, and Timothy Murray.  The group's disabilities include conditions such as chronic pain, anxiety, post-traumatic stress disorder (PTSD), and attention-deficit/hyperactivity disorder (ADHD).   (*See*

*generally* Docs. 169-1 through 169-17.)   All of these individuals were legally prescribed 9-Panel medications and were required to undergo medical evaluations with OMPs to be cleared to return to work.   According to the EEOC, these individuals were prescribed medications to treat or manage their underlying disabilities yet were told by the OMPs that their prescription medications were prohibited under AFS's drug policy, and thus, they could not return to work while using these medications.

Despite expressing their desire to continue using their prescription medications, some of these individuals agreed to stop taking them because they feared they would face forced unpaid leave or employment termination.  (*See, e.g.*, Doc. 169-4 at 3; Doc. 169-5 at 5; Doc. 169-7 at 3–4; Doc. 169-8 at 5; Doc. 169-11 at 4; Doc. 169-14 at 5; Doc. 169-17 at 6–8.)  Some of them were also forcibly placed on unpaid leave, including Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich.

The OMPs ultimately cleared Matthew Black, Heath McElveen, and Paul Nolin to return to work while using their prescription medications for ADHD, but they were not permitted to continue using other prescription medications.  (*See* Doc. 155-9 at 12, 15; Doc. 155-10 at 1–2, 11; Doc. 155-26 at 9.)  Mark Blinn was allowed to continue taking his prescription medication (Vicoprofen) to treat his chronic pain

condition so long as he took FMLA leave when using it during work hours. (*See* Doc. 155-12 at 51.)

In some instances, when an employee was not cleared to return to work while using certain prescription medications, before AFS's in-house OHD would clear the employee to return to work, the employee was required to sign a "Results of Rx Medication Review" form acknowledging that their prescription medication was "deemed inappropriate for use in a safety sensitive work environment" and that they could be subject to disciplinary action, including termination, if found to be taking their prohibited medications in the future.  (*See* Doc. 155-10 at 2; Doc. 155-26 at 12; Doc. 155-19 at 1; Doc. 155-21 at 10; Doc. 155-25 at 3; Doc. 155-26 at 12.)

### D. Procedural History

On April 6, 2020, the EEOC filed a Complaint against AFS alleging four separate claims under the ADA:

- Count 1: Discrimination on the Basis of Disability
- Count 2: Failure to Accommodate
- Count 3: Impermissible Qualification Standard
- Count 4: Interference

In its Complaint, the EEOC sought injunctive relief[4] and compensatory damages including backpay, front pay, interest, relocation expenses, job search

---

[4] The Court notes that the parties acknowledge that, since AFS lost the maintenance contract in 2018, none of the claimants remain employed with AFS.  As such, and because the parties make no reference to injunctive relief in the summary judgment briefing, the injunctive relief request is a moot issue.

expenses, and medical expenses as well as compensation for emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation and punitive damages.

## V. DISCUSSION

### A. Timeliness of Claims

Before turning to the substantive merits of AFS's summary judgment arguments, the Court must first address whether the claims of any of the individual claimants[5] for whom the EEOC seeks recovery are time-barred.  AFS argues that the EEOC's claims on behalf of eight of the claimants are time-barred because their discrimination claims arose outside the 180-day charging period under § 706.  The EEOC argues that all of its claims are timely because (1) § 706 does not limit the temporal scope of claims that the EEOC may pursue on behalf of a group of aggrieved individuals and (2) the continuing violation doctrine extends the charging period.  The Court will first address whether § 706 limits the temporal scope of EEOC enforcement actions.

#### 1.  § 706 precludes the EEOC from recovering on time-barred claims

It is well established that the procedural requirements to sue under Title VII also apply to claims brought under the ADA.  *Zillyette v. Cap. One Fin. Corp.*, 179

---

[5] Although they are not plaintiffs in the traditional sense, the EEOC brings this suit on behalf of 17 former employees of AFS.  These individuals will be referred to as the "claimants."

F.3d 1337, 1339 (11th Cir. 1999) (citing 42 U.S.C. § 12117(a)).  Section 706 of Title

VII establishes the relevant pre-suit administrative process, which begins when a

charge of discrimination is filed with the EEOC.  42 U.S.C. § 2000e-5(b).  In non-

deferral states, of which Alabama is one, a claimant must file a charge with the

EEOC within 180 days of the date of the alleged discrimination.  *Rizo v. Alabama

Dep't of Hum. Res.*, 228 F. App'x 832, 835 (11th Cir. 2007); 42 U.S.C. § 2000e-

5(e)(1) ("A charge under this section shall be filed within one hundred and eighty

days after the alleged unlawful employment practice occurred . . . .").  Claims that

are not filed within this 180-day charging period are time-barred.  *See Jordan v. City

of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008) (citing *Alexander v. Fulton

Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000), *overruled on other grounds by Manders

v. Lee*, 338 F.3d 1304 (11th Cir. 2003)).

AFS primarily relies upon the district court decision in *Equal Emp.

Opportunity Comm'n v. Freeman* for its argument that the plain language of §

706(e)(1) "precludes the EEOC from seeking relief for individuals who were not

subjected to an unlawful employment practice" during the charging period.  No.

RWT 09cv2573, 2010 WL 1728847, at *4 (D. Md. Apr. 27, 2010).  Based on that

court's interpretation of § 706, AFS argues that the EEOC's claims on behalf of eight

of the claimants are time-barred because they arose more than 180 days before Paul

Nolin filed his EEOC charge on December 12, 2016, which, according to AFS, is

the "representative charge" for timeliness purposes.  That is, according to AFS, any claim that arose before June 15, 2016 is time-bared and should be dismissed.

In response, the EEOC argues the plain language of § 706(e)(1) goes no further than to establish the timeframe for when a charge must be filed and that there is no language in the statute limiting the temporal scope of claims that the EEOC may pursue on behalf of a group of aggrieved individuals.  Additionally, the EEOC relies on the Supreme Court's decisions in *Occidental Life Ins. Co. of Cal. v. Equal Emp. Opportunity Comm'n*, 432 U.S. 355 (1977), and *General Telephone Co. of Northwest v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318 (1980), to argue that it has broad authority to pursue any claim of unlawful employment practices that arises out of a reasonable investigation of a timely filed charge, which includes the individual claims it advances here.

*Occidental Life* and *General Telephone* establish two principles: (1) the EEOC is not required to bring an enforcement action within any maximum period of time, *see* 432 U.S. at 360, and (2) the EEOC is not limited to pursuing the type of alleged unlawful employment actions identified by the charge, *see* 446 U.S. at 331. But this Court has not uncovered, nor have the parties identified, any decision by the Supreme Court or the circuit courts that addresses the specific issue presented here. That is, whether the temporal scope of an EEOC enforcement action that also seeks monetary damages is limited to claims considered "timely" under § 706(e)(1).

District court decisions are split on this issue, but the general trend appears to be in favor of finding that § 706(e)(1) precludes the EEOC from pursuing claims that arose outside the charging period, even when those untimely claims are related to otherwise timely claims. *See, e.g., Equal Emp. Opportunity Comm'n v. CRST Van Expedited, Inc.*, 615 F. Supp. 2d 867, 877–78 (N.D. Iowa 2009) (collecting cases and holding that "Title VII generally does not grant the EEOC the power to resurrect otherwise stale claims of unlawful employment discrimination"); *Freeman*, 2010 WL 1728847, at *4; *Equal Emp. Opportunity Comm'n v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 624 (N.D. Ohio 2011) ("Plainly, if a charge is not filed within that time limitation, the EEOC may not act upon it. No exception exists in the statute allowing the EEOC to recover damages for individuals whose claims are otherwise time-barred.").

In *Equal Emp. Opportunity Comm'n v. Joe's Stone Crabs*, the Eleventh Circuit addressed a similar issue to the one presented here—namely, the "appropriate temporal reach" of disparate treatment claims brought by the EEOC pursuant to a commissioner's charge. 296 F.3d 1265, 1271 (11th Cir. 2002), *cert. denied,* 539 U.S. 941 (2003). In analyzing the merits of the EEOC's claims, the Eleventh Circuit held that only discriminatory acts that occurred during the charging period were actionable under § 706 and thus to prevail on its disparate treatment claims in that case, the EEOC "had to show acts of intentional discrimination injuring each of the

. . . claimants that occurred" within the charging period.  *Id.* at 1272.  Likewise in *Equal Emp. Opportunity Comm'n v. Sears, Roebuck & Co.*, in analyzing a pattern and practice suit brought under § 707, this Court relied on dicta from the *Occidental Life* decision to reason that § 706(e) "is an example of a statute of limitations period applicable to suits filed under [§ 706]" and that "said period is also applicable to suits initiated by the EEOC."  490 F. Supp. 1245, 1260 (M.D. Ala. 1980) (citing 432 U.S. at 371–72).

The Court joins the other courts that have concluded that § 706 does not permit the EEOC to pursue otherwise time-bared claims for unlawful employment discrimination.  The consequence of finding otherwise "would permit the EEOC to destroy all principles of repose and force employers to defend against zombie-like claims from the distant past."  *CRST Van Expedited, Inc.*, 615 F. Supp. 2d at 878. And the EEOC's argument that it may pursue *any* claim arising out of a reasonable investigation of a timely-filed charge is inconsistent with both the plain language of § 706, *see* 42 U.S.C. § 2000e-5(e)(1) (requiring a charge of discrimination to be filed within 180 days of when the alleged unlawful employment practice occurred); 42 U.S.C. § 2000e-5(g)(1) (damages for back pay "shall not accrue from a date more than two years prior to the filing of a charge with the Commission"), and interpretations of § 706 by and within the Eleventh Circuit, *see Joe's Stone Crabs*, 296 F.3d at 1271–72; *Sears*, 490 F. Supp. at 1260.

## 2.  The continuing violation doctrine does not apply

Invoking the continuing violation doctrine, the EEOC further argues that all claims are timely because all of the claimants were subjected to AFS's ongoing and continuing policy of discrimination.  The Court disagrees, as the alleged unlawful employment practices at issue here—AFS's failure to grant reasonable accommodations and placing employees on unpaid leave until they were cleared to return to work—are discrete employment actions.  *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 114 (2002)).  The continuing violation doctrine does not apply to untimely claims of discrete acts, "even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.  Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*  Prior discrete discriminatory acts that are untimely are not actionable, *id.* at 114, and "neutral policies that give present effect to the time-barred conduct do not create a continuing violation," *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002) (citing *United Air Lines, Inc. v. Evans*, 431 US. 553, 558 (1977)).  Thus, the continuing violation doctrine does not extend the actionable time period here beyond the charging period.

### 3.  Claims for discrete acts arising before May 23, 2016 are time-barred

To no surprise, the parties also disagree as to the date the charging period began to run.  AFS contends the Nolin charge serves as the "representative charge" because Nolin's charge indicated he was filing on behalf of other aggrieved individuals, whereas Simmons's charge did not.   AFS further argues that the actionable time period in this case spans from December 12, 2016, when Nolin filed his charge, back 180 days to June 15, 2016.  The EEOC argues that because the intake questionnaires submitted by Simmons and Nolin contained sufficient information to meet the requirements for a charge under 29 C.F.R. § 1601.12(a), the relevant charge period dates to May 8, 2016 which is 180 days prior to when Simmons and Nolin filed their intake questionnaires on November 4, 2016.  In its reply brief, AFS argues the evidence demonstrates that the EEOC did not treat these intake questionnaires as "charges" because if it did, then it should have served notice by November 14, 2016, as required under § 706(b).  *See* 42 U.S.C. § 2000e-5(b). AFS also points to the fact that the EEOC did not give notice of the Simmons charge until November 28, 2016, and the Nolin charge until December 12, 2016, to demonstrate that the EEOC did not treat their intake questionnaires as charges.

The Court agrees the trigger period spans from when the two charges were actually filed, not from the date of the intake questionnaires.  Even if Simmons's and Nolin's intake questionnaires met the charge requirements under the EEOC's

regulations, the record shows that the EEOC did not treat these intake questionnaires as formal charges.  And further, the EEOC's intake questionnaire documentation states the following in bold: "Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge."  (Doc. 153-48 at 5; Doc. 153-49 at 5.)  It is disingenuous for the EEOC to take a contrary position in this proceeding.

But the Court disagrees that only the Nolin charge can serve as the representative charge here.  While Simmons did not indicate that he filed his charge on behalf of other aggrieved employees, the EEOC's correspondence with AFS reflects that the EEOC determined AFS discriminated against a class of employees based on Simmons's charge.  (*See* Doc. 153-49 at 22–23.)  Thus, the Court concludes that any claims arising from conduct prior to May 23, 2016—180 days prior to Simmons's November 19, 2016 charge—are time-barred.  Those claims include those brought on behalf of the following claimants:  Amber Ficquette-Cottrell, Azeala Hutchison, Timothy Murray, Marcus Rich (with the exception of his claims that arose within the charging period), Michael Sanders, Rickey Sego, and Rick Skinner.  The EEOC's claims therefore can proceed with respect to claimants Matthew Black, Mark Blinn, Rickey Helms, Tammy Bright Hudson, Richard Johannes, Tammie Johanes, Sabra Distasio Kelley, Heath McElveen, Paul Nolin, Marcus Rich (on claims arising after May 23, 2016), and Mervin Simmons.

### B. Applicable Legal Framework

The Court now turns to the substantive arguments AFS raises in its summary judgment motion via its attack on the EEOC's ability to make out a *prima facie* case of discrimination under the ADA.

To begin, a broad discussion of the ADA is appropriate.  The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A person is disabled under the ADA if they have "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such an impairment," or is "regarded as having such an impairment."  *Id.* § 12102(1).  An individual is disabled under § 12102(1)(C)'s "regarded as" prong "if the individual is subjected to a prohibited action [e.g., firing, demotion] because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity."  29 C.F.R. § 1630.2(l)(1).

An ADA plaintiff may survive a defendant's summary judgment motion by presenting either direct or circumstantial evidence of discrimination.  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  *Joe's Stone Crab,*

*Inc.*, 220 F.3d at 1286 (citation omitted). Absent direct evidence, a plaintiff may prove intentional discrimination through the *McDonnell Douglas* burden-shifting framework for circumstantial evidence. *See Dulaney v. Miami-Dade Cty.*, 481 F. App'x 486, 489 (11th Cir. 2012) ("the burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims") (quoting *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007)); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (evaluating ADA claim under the *McDonnell Douglas* framework).

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a *prima facie* case, and by doing so, creates a rebuttable presumption of discrimination. *Cleveland*, 369 F.3d at 1193. The burden then shifts to the defendant "to articulate a legitimate, non-discriminatory reason for" the challenged conduct. *Id.* Notably, the defendant's burden at this stage is merely one of production, and it need not "persuade the court it was motivated by the [proffered] reason." *Id.* By meeting this burden, the defendant eliminates the presumption of discrimination and leaves the plaintiff with the ultimate burden of proving that the defendant acted with intentional discrimination. *Id.*; *see also Wascura v. City of S. Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001). Specifically, the plaintiff must "proffer sufficient evidence to create a genuine issue of material fact as to whether

each of the defendant's proffered reasons is pretextual." *Wascura*, 257 F.3d at 1243. Failure to do so entitles the defendant to summary judgment on the claim. *Id.*

To establish a *prima facie* case under the ADA, the EEOC must show that the individual claimants (1) had a disability; (2) were qualified individuals; and (3) were subjected to unlawful discrimination through some sort of adverse employment action because of their disabilities. *Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). *See also McCoy v. Geico Gen. Ins. Co.*, 510 F. Supp. 2d 739, 748 (M.D. Fla. 2007) (noting that the *prima facie* elements required under the ADA for disparate treatment claims and failure-to-accommodate claims are the same).

The crux of the EEOC's Complaint here is that AFS discriminated against this group of employees by prohibiting them from working and then threatening termination if they continued to use their legally prescribed, disability-related medications that AFS decided to prohibit under its revised drug policy. Concerning this conduct, the EEOC brings a general ADA discrimination claim under § 12112(a), a failure-to-accommodate claim under § 12112(b)(5)(A), a claim for an impermissible screening standard under §§ 12112(b)(3) and 12112(b)(6), and an interference claim under § 12203(b).

With these principles in mind, the Court will address each of the EEOC's claims in turn.

## C. Count I: Disability Discrimination

### 1. EEOC's Prima Facie Case

The parties vigorously dispute whether the EEOC can establish that the claimants were disabled or suffered an adverse employment action under the first and third elements of its *prima facie* case.[6]

### a. Discrimination Based on Disability

The Court begins its analysis with the third *prima facie* element, which requires the EEOC to demonstrate that the claimants suffered an adverse employment action because of their disabilities.

An adverse employment action is one that "impact[s] the 'terms, conditions, or privileges' of [a] plaintiff's job in a real and demonstrable way." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006). Although proof of direct economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* That is, an employment action must have a

---

[6] There is no dispute that the claimants were qualified individuals under the second *prima facie* element. Accordingly, the Court will assume for purposes of summary judgment that this element is satisfied.

"serious and material change in the terms, conditions, or privileges of employment"
to be actionable.   *Id.* (emphasis omitted).   Whether the employer's conduct
constitutes an actionable adverse employment action under the ADA is determined
by whether "a reasonable person in [the plaintiff's] position would view the
employment action in question as adverse." *Doe v. Dekalb County School Dist.*, 145
F.3d 1441, 1449 (11th Cir. 1998).

The EEOC argues that AFS subjected the claimants to an adverse employment
action in two ways: (1) by requiring the claimants to cease using their prescription
medications as a condition of their continued employment, and (2) by involuntarily
placing several of the claimants on unpaid leave.   As to the former, the Court finds
that the EEOC has not shown how merely being required to cease usage of certain
prescription medications, without more, is sufficiently adverse to be actionable.   As
to the latter, there is sufficient evidence that those claimants, who were placed on
involuntary, unpaid leave, suffered an actionable adverse employment action.

As a threshold matter, to the extent that AFS merely required the claimants to
cease using their certain prescription medications as a condition of continued
employment, the EEOC has not shown how that directive alone had a tangible
adverse effect on the claimants' employment.   For example, it is undisputed that
Rickey Helms, Tammy Bright Hudson, Richard Johannes, Tammie Johannes, Sabra
Distasio Kelley, Paul Nolin, and Mervin Simmons continued working in the same

positions even after agreeing to no longer take their prescription medications, and there is no evidence that any of these individuals were terminated, demoted, disciplined, or missed out on advancement opportunities as a result of this action. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (adverse employment actions "consist of things that affect continued employment or pay— things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone"). Moreover, to the extent the EEOC argues that many of the claimants acknowledged in writing that their prescription medications were "inappropriate for use in a safety sensitive work environment" and that they "may be subject to disciplinary action up to and including discharge" if caught taking these medications in the future, neither signing a form nor fear of termination are sufficient to constitute an adverse employment action. *See Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149 (11th Cir. 2021) (citing *Burlington*, 548 U.S. at 68) (threat of termination insufficient under the lower retaliation standard); *Kinsey v. City of Jacksonville*, No. 3:01 CV 785 J 32MCR, 2005 WL 3307211, at *7 (M.D. Fla. Dec. 6, 2005), *aff'd*, 189 F. App'x 860 (11th Cir. 2006) (signing medication disclosure form was not an adverse employment action). Finally, without minimizing the mental and physical side-effects the claimants experienced at work after they stopped taking their prescription medications, this type of impact is insufficient to support a

discrimination claim. *Davis*, 245 F.3d at 1238 ("[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action.").

But the EEOC has shown that placing claimants Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich on forced, unpaid leave constituted an adverse employment action. It is well established that unpaid leave can constitute an adverse employment action as it directly impacts an employee's compensation. *See Monaghan*, 955 F.3d at 860; *Lewis*, 934 F.3d at 1181–82, 1184. Here, viewing the record most favorably to the EEOC, there is evidence that Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich were told that their prescription medications were prohibited under AFS's drug policy and were involuntarily placed on unpaid leave until they either obtained medical clearance to return to work or agreed to stop taking their medications.

Specifically, relying on timesheets and a signed "Drug and Alcohol-Free Workplace Program Results of Rx Mediation" form, AFS disputes that Matthew Black was ever placed on unpaid leave. (*See* Doc. 155-10 at 2, 21–22.) The EEOC however has submitted Black's sworn declaration in which he states under oath that he was placed on unpaid leave for five days in December 2016 after AFS told him he could no longer take Adderall while at work. (*See* Doc. 169-1 at 4.) Thus, there is a genuine dispute of material fact as to whether Black was placed on unpaid leave. And if a jury were to accept the EEOC's version of events, it could conclude that

forcing Black on unpaid leave because of his prescription medication use constitutes an adverse employment action.

The parties do not dispute that Marcus Rich was placed on unpaid leave between November 20, 2016 and January 31, 2017, but they do dispute the reasons for why he was placed on leave. AFS claims that Rich was placed on unpaid leave due to physical restrictions imposed following his shoulder surgery and not because of his prescription medication use. (*See* Doc. 155-29 at 22.) The EEOC however points to Rich's declaration where he states under oath that he was placed on unpaid leave because of his prescriptions for Hydrocodone and Tramadol. (*See* Doc. 169-12 at 5.) And again, if a jury were to accept the EEOC's version of the facts, a jury could conclude that Rich suffered an adverse employment action.

Finally, it is undisputed that Mark Blinn was placed on unpaid leave for approximately two months due to his use of Vicoprofen and was ultimately cleared to return to work on the condition that he "take Vicoprofen 6-8 hours before [his] work shift" and "take intermittent FMLA leave when needed." (Doc. 169-2 at 3–5.) And it is undisputed that Heath McEleveen was placed on unpaid leave for approximately three weeks due to his use of Adzenyz XR-ODT, Lorazepam, and Percocet, which treated his ADHD, PTSD, and anxiety. (Doc. 169-9 at 3–6.)

AFS makes two arguments as to why placing the claimants on unpaid leave is not an adverse employment action, neither of which is persuasive. First, AFS points

to the fact Marcus Rich seeks no backpay at all and that Matthew Black, Mark Blinn, and Heath McElveen seek only *di minimis* backpay. But AFS has not shown that the amount of backpay sought is a dispositive consideration when the employee was involuntarily and forcibly placed on unpaid leave. And in any event, the durations at issue here are of such periods (5 days to approximately two months) that a day or two of leave without pay is not an issue of serious debate.

Second, AFS relies on *Austgen v. Allied Barton Sec. Servs.*, LLC, 815 F. App'x 772 (5th Cir. 2020), to argue that "temporary medical leave (even if unpaid) is not an adverse action; it is an accommodation." (*See* Doc. 153 at 88–89.) The Court does not find *Austgen* persuasive as it is factually distinguishable. Unlike in *Austgen*, where the plaintiff was placed on temporary medical leave after he reported that he could no longer perform the duties of his position due to his chronic back pain, 815 F. App'x at 773, 776, here AFS unilaterally forced the claimants on unpaid leave and did so without an accommodation request by the claimants or without any showing that the claimants could not actually perform their job duties either with or without their prescription medications.[7]

---

[7] Furthermore, the *Austgen* court acknowledged that unpaid leave can constitute an adverse action in certain other cases. *See* 815 F. App'x at 776. *See also Dawson v. Akal Sec. Inc.*, 660 F. App'x 504, 506 (9th Cir. 2016) ("The fact that unpaid leave may be a reasonable accommodation when it is requested 'does not mean that it cannot also be an adverse action, particularly where the employee is placed on unpaid leave involuntarily.'" (quoting *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015)) (emphasis omitted)).

The Court concludes that the EEOC has presented sufficient evidence to establish that Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich suffered actionable adverse employment actions when AFS placed them on forced, unpaid leave.  As to the other claimants, the EEOC has not provided sufficient evidence establishing that forbidding employees from taking certain prescription medications pursuant to a company policy constituted a serious and material change to the terms, conditions, or privileges of their employment such that they suffered an adverse employment action.

Accordingly, summary judgment is due to be granted in AFS's favor as to claimants Winston Mervin Simmons, Paul Nolin, Richard Johannes, Tammie Johannes, Rickey Helms, Sabra Distasio Kelley, and Tammy Bright Hudson as to Count I, leaving for further discussion the disability element with respect to Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich.

### b.  Regarded as Disabled

The parties dispute whether the EEOC can show the remaining claimants (Black, Blinn, McElveen and Rich) meet either the "actually disabled" or the "regarded as disabled" prongs of the disability definition.  The EEOC need only meet one of the disability definitions to satisfy this *prima facie* element of its case, and the Court finds that it need only analyze the "regarded as" disabled definition because it is dispositive here.

An individual is "regarded as" disabled under the ADA where there is evidence establishing that the individual "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Lewis*, 934 F.3d at 1181 (quoting 42 U.S.C. § 12102(3)(A)).  In *Lewis*, the Eleventh Circuit explained that "built in to the 'regarded as' definition of disabled is an analysis of whether the employer subjected the employee 'to an action prohibited under this chapter because of an actual or perceived physical or mental impairment.'"  *Id.* at 1184 (quoting 42 U.S.C. § 12102(3)(A)).  "The evidence tending to prove the 'regarded as' definition of disabled therefore often is duplicative of the evidence relevant to the third *prima facie* element."  *Id.* (citing 29 C.F.R. § 1630, App. ("While a person must show, for both coverage under the 'regarded as' prong and for ultimate liability, that he or she was subjected to a prohibited action because of an actual or perceived impairment, this showing need only be made once.")).

As previously discussed, there is sufficient evidence from which a jury could conclude that AFS subjected Black, Blinn, McElveen, and Rich to an adverse employment action when it placed them on forced, unpaid leave based on AFS's assertion that their prescription medications *could* interfere with their ability to safely perform their work duties.  This evidence is likewise sufficient to meet the

"regarded as" disabled definition for the same reasons, especially in the context of AFS's policy which provided that employees deemed unable to work under the policy will be deemed disabled and therefore able to apply for short-term disability benefits. *See Lewis*, 934 F.3d at 1184.

AFS relies on *Goff v. Performance Contractors, Inc.*, No. CV 18-0529-WS-MU, 2020 WL 1794967 (S.D. Ala. Apr. 8, 2020), and *Daw v. G.A. W. & Co., Inc.*, No. CV 19-0525-MU, 2021 WL 6052800 (S.D. Ala. Apr. 20, 2021), to argue that prescription medication use is not a proxy for disability and thus the EEOC cannot establish that AFS regarded these claimants as disabled merely because of their prescription medication use.[8]  In response, the EEOC cites numerous cases where courts in this circuit have concluded plaintiffs can show that they were "regarded as" disabled where their employers restricted or prohibited them from working based on the employers' perception that the plaintiffs' prescription medications limited their ability to work.  *See Haynes v. City of Montgomery*, 344 F. App'x 519, 520 (11th Cir. 2009) (plaintiff presented sufficient evidence that his employer regarded him as disabled when he was fired based on perceived performance limitations from use of prescription medications); *Rigby v. Springs Indus., Inc*, 156 F. App'x 130, 132 (11th

---

[8] In a similar vein, AFS implemented its policy against the claimants, and forced several of them on unpaid leave, without any evidence that any of these individuals could not actually perform their job duties while taking their prescribed medications.  In other words, AFS treated their prescription medication use as a proxy for unsafe work performance.

Cir. 2005) (holding that district court erred in granting summary judgment against the plaintiff on his "regarded as disabled theory" in part where it was undisputed that the employer regarded the plaintiff "unable to perform any manufacturing job because of the potential side effects of his use of Lortab to treat the pain that results from his diabetes or its complications"); *Byrd v. Outokumpu Stainless USA, LLC*, No. CV 20-0520-WS-M, 2022 WL 2134993, at *8 (S.D. Ala. June 14, 2022) (adopting the reasoning in *Haynes*); *Howard v. Norfolk S. Corp.*, No. 2:17-CV-02163-RDP, 2020 WL 5569922, at *6–7, *14 (N.D. Ala. Sept. 17, 2020) (plaintiff sufficiently established that his employer regarded him as having an impairment based in part on a letter sent to the plaintiff by his employer stating that he was "not medically fit for service" due to his Oxycodone and Methadone prescriptions); *Lisby v. Tarkett Ala., Inc.*, No. 3:16-CV-01835-MHH, 2020 WL 1536386, at *5 (N.D. Ala. Mar. 31, 2020) (a reasonable jury could conclude that the company's doctor perceived the plaintiff to be disabled based on the doctor's "perception of the impairments of [the plaintiff's] methadone use"). *See also Equal Emp. Opportunity Comm'n v. Outokumpu Stainless USA, LLC*, No. CV 20-521-CG-B, 2022 WL 4004769, at *3, *17 (S.D. Ala. Sept. 1, 2022) (finding a material issue of fact as to whether the plaintiff suffered an adverse action "due to disability" based in part on evidence that the employer's retained medical provider determined the plaintiff was

not cleared for safety-sensitive duty based on his "use of Xanax, which was prescribed to treat his anxiety, a disability").

While there is no binding authority from the Eleventh Circuit expressly addressing this specific issue, the weight of persuasive authority clearly leans in the EEOC's favor. And the Court finds that authority persuasive. Accordingly, the Court concludes the EEOC has shown that AFS regarded Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich as disabled where, pursuant to its drug policy, AFS deemed them "not fit for duty" due to their prescription medication use and subsequently placed each of them on unpaid leave.

## 2. AFS's Legitimate, Non-Discriminatory Explanation

Having found that the EEOC has satisfied its *prima facie* burden as to the EEOC's claims on behalf of Black, Blinn, McElveen, and Rich, the EEOC has established the presumption that AFS unlawfully discriminated against these claimants because of their disabilities by placing them on unpaid leave. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). Thus, the burden shifts to AFS to articulate a legitimate, nondiscriminatory reason for its actions. *See id.* at 255.

With respect to its decision to place claimants Black, Blinn, McElveen, and Rich on leave, AFS reiterates its prior argument that doing so was appropriate because the ADA requires employers to consider leave, even unpaid, as a reasonable

accommodation. This is not a nondiscriminatory reason under the facts presented here. Notwithstanding the fact that it is disputed whether unpaid leave was a reasonable accommodation, by claiming that it was accommodating these claimants because of their prescription medication use, AFS implicitly concedes that its actions were motivated by the claimants' disabilities. While it is true that their prescription medication usage does not per se mean they were disabled within the context of the ADA, it generally is not disputed that these claimants took their medications *because of* their disabilities (chronic pain, PTSD, ADHD, etc.) and that AFS's forced leave was necessarily and inextricably tied to their respective conditions. Indeed, even under AFS's policy, claimants determined unable to work within the parameters of the AFS policy, were deemed disabled and therefore eligible for short-term disability benefits.

Because AFS has not sufficiently rebutted the presumption of discrimination at this stage, summary judgment is due to be denied on Count I with respect to claimants Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich.

### D. Claim II: Failure to Accommodate

In Count II, the EEOC asserts that AFS's drug policy does not provide reasonable accommodations for individuals in safety-sensitive positions who take Panel-9 prescription medications. Its burden here is the same as that for its disability discrimination claim. *See McCoy*, 510 F. Supp. 2d at 748. And like the disability

discrimination claim, AFS argues that the EEOC cannot establish a *prima facie* case with respect to its failure-to-accommodate claim, with particular emphasis on the adverse employment action element.

After the parties submitted their briefs, the Eleventh Circuit addressed this issue in *Beasley v. O'Reilly Auto Parts*, holding that "discrimination in the form of a failure to reasonably accommodate is actionable under the ADA only if that failure negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment." 69 F.4th 744, 754 (11th Cir. 2023) (first citing 42 U.S.C. § 12112(a), and then citing *Holly*, 492 F.3d at 1263 n.17). Thus, according to *Beasley*, the EEOC must show that the claimants suffered an adverse employment action as a result of AFS's failure to accommodate. *See id.*

Because the Court already has concluded that the EEOC has not shown that claimants Simmons, Nolin, R. Johannes, T. Johannes, Helms, Kelley, and Hudson suffered an adverse employment action, summary judgment is also due to be granted in AFS's favor as to these claimants on Count II.

Additionally, the Court already has found that the EEOC has sufficiently shown that Black, Blinn, McElveen, and Rich suffered actionable adverse employment actions with respect to its disability discrimination claim when AFS placed them on forced, unpaid leave based on their prescription medication use. But

the Court's analysis does not stop there because to survive summary judgment on its failure-to-accommodate claim, the EEOC also must show that Black, Blinn, McElveen, and Rich were placed on unpaid leave as a result of AFS's failure to accommodate their disabilities.

AFS argues the EEOC cannot show that AFS denied any claimant a specific request for a job-related accommodation that was necessary for them to perform essential job functions. In response, the EEOC argues that the claimants requested accommodations by asking to continue using their prescription medications, that AFS refused to engage in the interactive process, and that continuing their use of these prescription medications was a reasonable accommodation.

To trigger an employer's duty to provide a reasonable accommodation, the employee must "make a specific demand for an accommodation" and "demonstrate that such accommodation is reasonable." *Owens*, 52 F.4th at 1334 (citing *Frazier-White v. Gee*, 818 F.3d 1249, 1255–56 (11th Cir. 2016)) (applying ADA principles in Rehabilitation Act case). The burden is on the employee to (1) "identify—at least in broad strokes—the limitations [his] mental or physical condition imposes," and (2) "link [his] disability to [his] requested accommodation by explaining how the requested accommodation could alleviate the workplace challenges posed by [his] specific disability." *Id.* at 1335. "The bottom line is that employees must give employers enough information to respond effectively to an accommodation request."

*Id.  See also Williamson v. Clarke Cnty. Dep't of Hum. Res.*, 834 F. Supp. 2d 1310, 1320 (S.D. Ala. 2011) ("[A]t a minimum, the employee must request some change or adjustment in the workplace *and* must link that request to his disability, rather than simply presenting the request in a vacuum.").

Viewing the record in a light most favorable to the EEOC, the EEOC has failed to identify sufficient evidence to support the EEOC's failure-to-accommodate claim with respect to Black, Blinn, McElveen and Rich.  First, with McElveen, the EEOC's evidence shows that McElveen was told he "was not fit for duty while taking Adzenys XR-ODT, Percocet, and Lorazepam" and that he would need to stop taking these medications before he could return to work.  (Doc. 169-9 at 4.) McElveen responded by telling AFS that he "needed to speak with [his] prescribing physician before agreeing or stating that [he] would no longer take Adzenys XR-ODT, Percocet, and Lorazepam."  (*Id.*)  This is not an accommodation request, but even if it was — which would be a generous interpretation — there is no evidence that McElveen ever explained to AFS how this accommodation request would address the limitations presented by his disabilities.

Second, as to Rich, the record shows that after AFS told him he could no longer take Hydrocodone and Tramadol and continue working in his safety sensitive position, he told AFS that he did not want to change his medications "because at that time Hydrocodone and Tramadol effectively managed [his] chronic pain condition

from [his] shoulder surgery." (Doc. 169-12 at 5.) But again, there is no evidence that Rich ever informed AFS how his post-surgery pain was substantially limiting or how continuing to take Hydrocodone and Tramadol would alleviate workplace challenges resulting from his post-surgery pain.

Finally, with respect to Black (ADHD) and Blinn (chronic pain), the EEOC has failed to identify sufficient evidence, or even advance an argument specific to each of them, showing that they made accommodation requests, let alone show how any requests would accommodate the limitations presented by their disabilities.

Based on the forgoing, the Court concludes that summary judgment is due to be granted in AFS's favor on Count II as to claimants Winston Mervin Simmons, Paul Nolin, Richard Johannes, Tammie Johannes, Rickey Helms, Sabra Distasio Kelley, and Tammy Bright Hudson because the EEOC has not shown that these claimants suffered an adverse employment action as a result of AFS's failure to accommodate. Summary judgment is also due to be granted in AFS's favor on Count II as to claimants Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich because the EEOC has failed to sufficiently show that these four claimants made specific demands for an accommodation and demonstrate that such accommodations were reasonable to alleviate the workplace challenges posed by their specific disabilities.

**E. Count III: Screening Out Claim**

Count III of the EEOC's Complaint alleges that AFS's drug policy violates the ADA under §§ 12112(b)(3) and 12112(b)(6) as an impermissible qualification standard that screens out or tends to screen out qualified individuals with disabilities. Section 12112(b)(3) prohibits "utilizing standards, criteria, or methods of administration" that (1) "have the effect of discrimination on the basis of disability;" or (2) "perpetuate the discrimination of others who are subject to common administrative control." 42 U.S.C. § 12112(b)(3). Section 12112(b)(6) prohibits

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

42 U.S.C. § 12112(b)(6).

The parties dispute whether this claim is to be analyzed as a disparate treatment or disparate impact claim. According to AFS, claims challenging a facially neutral qualification standard under § 12112(b)(6) are treated as disparate impact claims, which require a plaintiff to present statistical evidence that the challenged policy had a disproportionate impact on disabled individuals. But AFS ignores the fact that the EEOC also brings this claim under § 12112(b)(3). Additionally, the EEOC responds by noting the Supreme Court has recognized that "[b]oth disparate-treatment and disparate-impact claims are cognizable under the

ADA."  (Doc. 168 at 88 (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).)

The difference between a claim for disparate treatment and disparate impact is whether there is evidence that the employer intended to discriminate on the basis of disability.  For example, a plaintiff bringing a disparate treatment claim under the ADA must establish that his employer "simply treats some people less favorably than others because of" a disability.  *Raytheon*, 540 U.S. at 52.  "In contrast, disparate impact claims examine the way in which [facially neutral] employment policies and practices disproportionately *effect* certain job applicants or employees."  *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, No. 2:17-CV-01649-MHH, 2022 WL 2959569, at *4 (N.D. Ala. July 26, 2022) (citing *Raytheon*, 540 U.S. at 52–53) (emphasis in original).

Courts are instructed to "be careful to distinguish between" disparate treatment claims and disparate impact claims "[b]ecause 'the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes.'"  *Raytheon*, 540 U.S. at 53 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 n.5 (1981)).  With this instruction in mind, the Court turns to Count III to determine whether the EEOC has alleged its impermissible screening standard claim under a disparate treatment or disparate impact theory.

In the Complaint, the EEOC alleges that AFS violated §§ 12112(b)(3) and 12112 (b)(6) by "discriminating against . . . a class of employees, on the basis of disability." (Doc. 1 at 10.)  More specifically, the EEOC alleges AFS "used criteria that have the *effect* of discrimination on the basis of disability," and that "[t]he *effect* of the practices detailed . . . has been to deprive . . . a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities." (Doc. 1 at 10 (emphasis added).)  Based on the language of the EEOC's Complaint, it appears that the EEOC alleged its impermissible screening standard claim as a disparate impact claim given its emphasis on the effect that AFS's drug and alcohol policy has had on the claimants.  Accordingly, the Court will determine whether the EEOC has sufficiently established a disparate impact claim to survive summary judgment.

"For a disparate-impact claim to succeed, a plaintiff must show that a facially neutral employment practice had a significant discriminatory effect on a single group of people." *Smith v. Miami-Dade Cnty.*, 621 F. App'x 955, 961 (11th Cir. 2015) (citing *Stephen v. PGA Sheraton Resort, Ltd.,* 873 F.2d 276, 278–79 (11th Cir. 1989)).  "Further, to establish a *prima facie* case of disparate impact, a plaintiff must provide comparative evidence showing that a policy has a disparate impact on the disabled." *Id.* (citing *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1218 (11th Cir. 2008) (holding that a district court correctly rejected a disparate-impact claim

because the plaintiff completely failed to present relevant comparative evidence)).
*See also Kintz*, 766 F. Supp. 2d at 1254 ("While 'no single test controls in measuring
disparate impact,' the plaintiff must produce some evidence about the population
that a policy applies to, some numbers or proportional statistics, in order to survive
a motion for summary judgment." (quoting *Hallmark Devs., Inc. v. Fulton Cnty.*,
466 F.3d 1276, 1286 (11th Cir. 2006))).

The EEOC has not presented any statistical evidence that AFS's drug policy
had a disparate impact on disabled individuals.  The EEOC relies on *Dolgencorp*,
No. 2:17-CV-01649-MHH, 2022 WL 2959569, at *8, to argue that statistical
evidence is not the only way to prove its impermissible screening standard claim.  In
*Dolgencorp*, the district court concluded that the EEOC need not prove its
qualification standard claim by statistical evidence where it presented evidence that
the class of claimants there were actually screened out as a result of the employer's
facially neutral policy.  *Id.* at *8–9.  But unlike *Dolgencorp*, the EEOC cannot show
that any of the claimants were actually "screened out" from their jobs.  That is, it is
undisputed that none of the claimants were terminated, or that AFS failed to hire any
of them, as a result of its revised drug policy.  And to the extent that the EEOC
argues that an "ultimate employment action" is not required to sustain a screening

out claim, it has not cited any binding authority to support that argument or any factually similar persuasive authority.[9]

Because the EEOC has failed to provide sufficient evidence that AFS's policy impermissibly screened out the claimants, summary judgment is due to be granted in AFS's favor as to Count III.

## F. Count IV: Interference

Finally, Count IV of the EEOC's Complaint asserts an ADA interference claim under 42 U.S.C. § 12203(b), alleging that AFS "has engaged in unlawful employment practices at its Fort Rucker, Alabama facility and elsewhere in violation of the ADA," including "discriminating against a class of sub-contractor employees, on the basis of disability." (Doc. 1 at 11.)

AFS does not present any substantive argument as to the interference claim in its summary judgment briefing but rather makes a passing reference to the EEOC's allegation asserted in Count IV, stating:

> While the Complaint asserts four causes of action, there are only three separate theories. Count 1 alleges an ADA disparate treatment claim. Count 2 alleges a failure-to-accommodate claim. Count 3 alleges a

---

[9] In a footnote, the EEOC cites *Baker v. Union Pac. R.R. Co.*, 580 F. Supp. 3d 647 (D. Neb. 2022), and *Cleary v. Fed. Exp. Corp.*, 313 F. Supp. 2d 930 (E.D. Wis. 2004), to argue that termination and failure-to-hire are not the only means of proving that an individual was "screened out" due to their disability. *Baker* is factually distinguishable because there the plaintiff was prevented from returning to work for a year. Here, the longest any of the claimants were placed on leave was two months. *Cf.* 580 F. Supp. 3d at 651. Additionally, unlike the plaintiff in *Cleary*, none of the claimants were forced to switch to a different position. *Cf.* 313 F. Supp. 2d at 933. Thus, the Court does not find either of these cases persuasive.

"screen out" / qualification standard claim.  Finally, Count 4 does not allege a separate ADA cause of action, but merely alleges that AFS is responsible for any ADA violations regardless of whether AFS was the direct employer or whether the employee worked for a sub-contractor.

(Doc. 153 at 30 (internal citations omitted).)  In response to a show cause order from the Court as to whether AFS's summary judgment motion covered the interference claim, AFS contends that it does and that there are "no separate issues of law or fact to be decided regarding" the interference claim as it seeks to extend liability on the same facts and legal theories alleged in Counts I, II, and III.  (Doc. 195 at 3.)

The issue with AFS's interpretation of the EEOC's interference claim here is that AFS fails to acknowledge that an ADA interference claim is a standalone cause of action distinct from an ADA discrimination claim.

The anti-interference provision of the ADA provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).  The Eleventh Circuit has "not yet had occasion to explain the proper standard for evaluating an ADA anti-interference claim." *Atchison v. Bd. of Regents of Univ. Sys. Of Ga.*, 802 F. App'x 495, 508 (11th Cir. 2020).  Some courts within this circuit have analyzed ADA interference claims under a test derived from the Eleventh Circuit's test for FHA interference claims, requiring a plaintiff to show "(1) that the plaintiff exercised a protected right; (2) a defendant interfered with, or

coerced, intimidated, or threatened the plaintiff on account of his exercise of that right; and (3) the defendant did so because of discriminatory animus." *Id*. at 509. *See also Callahan v. Emory Healthcare, Inc.*, No. 1:21-CV-1367-WMR-JSA, 2022 WL 18927486, at *14 (N.D. Ga. Nov. 10, 2022), *report and recommendation adopted*, No. 1:21-CV-1367-WMR-JSA, 2023 WL 2334987 (N.D. Ga. Feb. 16, 2023); *Mosley v. AM/NS Calvert, LLC*, No. CV 1:20-00517-KD-M, 2022 WL 843773, at *8 (S.D. Ala. Mar. 21, 2022)).  Other circuit courts have adopted slightly different tests.  For example, the Seventh Circuit has held that "a plaintiff alleging an ADA interference claim must demonstrate that: (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Atchison,* 802 F. App'x at 508–09 (quoting *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017)).

Regardless of the standard applied or whether summary judgment otherwise would be due to be granted, AFS did not formally move for summary judgment on the EEOC's interference claim in Count IV.  *See Celotex*, 477 U.S. at 322.  Aside from a passing reference to Count IV, AFS fails to identify the claimants or set forth the basic facts and law which, in its view, warrant summary judgment on this claim.

Indeed, the basis for this count, or AFS's response to it, have not been developed in the least bit.  And AFS cannot now—almost ten months after filing for summary judgment—cure this failure by claiming that its arguments as to Counts I, II, and III also apply equally to Count IV.  If that is so, AFS should have meaningfully developed this argument in its initial summary judgment briefing.  And "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments . . . ." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted).  Accordingly, summary judgment will not be considered or granted on Count IV.[10]

## VI. CONCLUSION

Based on the forgoing, it is ORDERED as follows:

1.     Defendant Army Sustainment, LLC's *Motion for Summary Judgment* (Doc. 153) is **GRANTED** in part and **DENIED** in part.

2.     All claims of the EEOC brought on behalf of Amber Ficquette-Cottrell, Azeala Hutchison, Timothy Murray, Marcus Rich (with the exception of his claims

---

[10] The Court intends to discuss this matter with the parties at a later date, as it appears that this count may only have been applicable to 3 of the 17 claimants, and the claims of those 3 individuals are due to be dismissed in this order.  Also, Count IV shall proceed only as to those claimants whose claims are not time-barred, as the Court interprets AFS's statute of limitations argument as directed to any and all claims asserted by the referenced 8 claimants.

that arose within the charging period), Michael Sanders, Rickey Sego, and Rick Skinner are **DISMISSED** as time-barred.

3. As to Count I, AFS's summary judgment motion is **DENIED** as to claimants Matthew Black, Mark Blinn, Heath McElveen, and Marcus Rich (timely claims only), and is **GRANTED** as to all other claimants (Rickey Helms, Tammy Bright Hudson, Richard Johannes, Tammie Johanes, Sabra Distasio Kelley, Paul Nolin, and Mervin Simmons);

4. On Count II, AFS's summary judgment motion is **GRANTED** as to all claimants (Matthew Black, Mark Blinn, Rickey Helms, Tammy Bright Hudson, Richard Johannes, Tammie Johanes, Sabra Distasio Kelley, Paul Nolin, and Mervin Simmons, Heath McElveen, and Marcus Rich) and this claim is **DISMISSED**;

5. On Count III, AFS's summary judgment motion is **GRANTED** as to all claimants (Matthew Black, Mark Blinn, Rickey Helms, Tammy Bright Hudson, Richard Johannes, Tammie Johanes, Sabra Distasio Kelley, Paul Nolin, and Mervin Simmons, Heath McElveen, and Marcus Rich) and this claim is **DISMISSED**;

6. On Count IV, summary judgment is **DENIED** as to all non-time-barred claimants (Matthew Black, Mark Blinn, Rickey Helms, Tammy Bright Hudson, Richard Johannes, Tammie Johanes, Sabra Distasio Kelley, Heath McElveen, Paul Nolin, Marcus Rich (on claims arising after May 23, 2016), and Mervin Simmons).

7.     *Defendant's Rule 12(b)(1) Motion to Dismiss Charging Party Paul Nolin's Claims for Lack of Subject Matter Jurisdiction* (Doc. 136) is **DENIED** as moot; and

8.     The EEOC's Motion for Leave to File Sur-Reply to Defendant's Reply (Doc. 200) is **DENIED** as moot.

**DONE** on this the 26th day of September 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE